UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————

LAMIA MEKY,                                         :
                          Plaintiff,                :
                                                    :
            v.                                      :            No. 5:16–cv–1020
                                                    :
JETSON SPECIALTY MARKETING                          :
SERVICES, INC., D/B/A JSM,                           :
                          Defendant.                :
—————————————————————

**OPINION**

**Defendants' Motion for Summary Judgment, ECF No. 24 - granted in part, denied in part**


**Joseph F. Leeson, Jr.**                                    **March 6, 2017**
**United States District Judge**


## I.      INTRODUCTION

Plaintiff Lamia Meky brought this action against her former employer, Defendant Jetson

Specialty Marketing Services, Inc., alleging violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e – e-17, for sexual harassment, hostile work environment, and

retaliation, of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), for

retaliation and interference, and of Pennsylvania's Wage Payment and Collection Law, 43 Pa.

Stat. §§ 260.1-260.45 ("WPCL").  Because Jetson has satisfied its obligations under the WPCL,

summary judgment is granted in its favor as to that claim.  Summary judgment is also granted in

part as to Meky's FMLA interference claim, to the extent that it is based on Jetson's alleged

failure to provide paperwork, because there is no evidence that Meky was prejudiced by the

alleged violation.  The Motion is denied in all other respects.

II.     **BACKGROUND**

   *A.     Undisputed Facts*

In 2012, Jetson entered into an agreement for temporary staffing with Hobbie Personnel

Services.  Through Hobbie, Meky began working for Jetson on January 27, 2014.  On July 2,

2014, Meky became a permanent employee with Jetson.

   In October 2014, Meky complained of sexual harassment by her supervisor Robert

Billings, who resigned from employment shortly thereafter.

   Toward the end of 2014, Meky requested to take four weeks of leave the following

summer because her mother needed surgery, but Meky was subsequently informed that she was

not eligible for FMLA leave.

   In early 2015, Meky had an incident with another employee in which the other employee

was alleged to have threatened her with a pair of scissors.  Weeks later, on February 27, 2015,

Meky reported feeling uncomfortable working around this employee and left work early.  An

investigation was conducted into her decision to leave work before the end of her shift and, on

March 9, 2015, Meky was terminated.

   *B.     Procedural History*

   Meky filed the instant action on March 3, 2016.  Compl., ECF No. 1.  On November 21,

2016, Jetson filed a Motion for Summary Judgment.  Defs.' Mot. Summ. J., ECF No. 24.  Jetson

contends that summary judgment should be awarded on the Title VII sexual harassment and

hostile work environment claims because the record establishes that it promptly investigated

Meky's sexual harassment complaint, and the alleged violator quit three days later.  Jetson

further argues that the Title VII retaliation claim should be dismissed because there is no

evidence of a causal link between Meky's complaint of harassment and her termination six

months later, and also that there were non-discriminatory reasons for her termination.  Next,

Jetson contends summary judgment should be granted on the FMLA interference claim because

Meky would not have been eligible for FMLA benefits during the period for which she sought

leave.  Jetson further argues that to the extent the interference claim is based on its alleged failure

to provide FMLA paperwork, Meky was not prejudiced.  As to the retaliation claim under the

FMLA, Jetson asserts that there is no evidence of a causal link between Meky's request for

FMLA leave in late 2014 and her termination in March 2015 and, as with her Title VII retaliation

claim, that there were non-discriminatory reasons for the termination.  Finally, Jetson contends

that it has paid Meky for all unused vacation hours, and therefore the WPCL claim should be

dismissed.  Meky filed a response in opposition to the Motion on December 9, 2016, Pl.'s Resp.,

ECF No. 27, and Jetson filed a reply on December 16, 2016, Defs.' Reply, ECF No. 29.

## III.    STANDARD OF REVIEW

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Heard v.*

*Waynesburg Univ.*, 436 F. App'x 79, 79 n.1 (3d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of

the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The court must

consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550

U.S. 372, 378 (2007).

## IV.    ANALYSIS

### A.    Title VII - Sexual Harassment and Hostile Work Environment

To establish a hostile work environment claim against an employer based on sexual

harassment, an employee must prove that: (1) she suffered intentional discrimination because of

her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally

affected her; (4) the discrimination would detrimentally affect a reasonable person of the same

sex in that position; and (5) the existence of respondeat superior liability.  *Huston v. P&G Paper

Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  To prove the existence of respondeat superior

liability under the last element, a plaintiff must "demonstrate that the employer failed to provide

a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that

it failed to take appropriate action.'"  *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001).

Focusing on the fifth element, Jetson argues that it should be granted summary judgment

because the undisputed evidence shows that Meky has failed to establish the existence of

respondeat superior liability.  Specifically, Jetson contends that its prompt and remedial action

eliminates its liability for Billings's conduct.[1]  *See Young v. Temple Univ. Hosp.*, 359 F. App'x 304, 309 (3d Cir. 2009) (affirming the grant of summary judgment in an employer's favor on hostile work environment and constructive discharge claims because the employer "took prompt and adequate remedial actions to address [the] harassment").

Whether Jetson's actions were "prompt," however, depends on the timing of Meky's complaint against Billings, which is contested.

It is undisputed that on October 31, 2014, Meky emailed the Director of Human Resources Heather Horvath about needing to address an "imperative issue," which Horvath forwarded to Human Resources Generalist Caleb Spess an hour later.  Emails dated Oct. 31, 2014, R. 284, ECF No. 24-6.  Spess testified that within hours of receiving the email, he began investigating the allegations by interviewing both Meky and Billings.  Spess Dep. 124:6-11, ECF No. 24-11.  Specifically, Spess interviewed Meky on Friday, October 31, 2014, and Billings on Monday, November 3, 2014.  *Id.*  A second meeting with Billings was scheduled for Tuesday, November 4, 2014, but he quit before the meeting concluded, which ended the investigation.  Horvath Dep. 138:9-140:13, ECF No. 24-9.

Spess testified that Meky had not previously complained to him about Billings, *see* Spess Dep. 98:11-20; however, Meky asserts that the October 31 email was not her first complaint.

---

[1]      Whether prompt and remedial action is an element of an employee's claim or an affirmative defense depends on whether the alleged harasser is the employee's supervisor or merely a co-worker.  *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998) (holding that where the alleged harasser is a supervisor with immediate authority over the employee and no tangible employment action is taken, the employer may raise an affirmative defense to liability by showing, inter alia, that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"); *Huston*, 568 F.3d at 104-05 (explaining that "employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action").  Regardless, both parties have produced evidence in support of their respective positions, placing pertinent facts in dispute and precluding the entry of summary judgment to Jetson.

Meky testified that on October 4, 2014, she sent an email to Horvath detailing Billings's physical contact "with young girls" at work and her increasing feelings of discomfort around him, but that nothing was done.  Meky Dep. 53:12-54:12, 118:15-20; Email dated Oct. 4, 2014, ECF No. 28-6.  Meky further testified that prior to October 31, 2014, she had spoken with her managers Melissa Kline and Rudolph Preletz about the problems she was having with Billings.  Meky Dep. 46:10-21, 53:12-25, 56:24-57:8.  Kline, however, testified that Meky never brought any concerns to her about Billings.  Kline Dep. 75:13-76:4, ECF No. 24-12.

In light of the disputed issues of fact as to whether Jetson was aware of Meky's sexual harassment complaint prior to October 31, 2014, its request for summary judgment on the sexual harassment and hostile work environment claims is denied.  *See Neely v. McDonald's Corp*., 340 F. App'x 83, 89 (3d Cir. 2009) ("Any dispute regarding the promptness and adequacy or appropriateness of management's remedial action is a factual issue for the jury to decide."); *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007) (explaining that it would be proper for a court to grant summary judgment where the employer undertook an investigation of an employee's complaint within a day of being notified, but that a jury should decide whether the actions of an employer that waited three months before taking action were prompt and adequate); *Lawrence v. Schuylkill Med. Ctr. E.*, No. 3:11-CV-1339, 2012 U.S. Dist. LEXIS 114344, at *48-49 (M.D. Pa. Aug. 14, 2012) (concluding that the case presented a jury question as to whether the employer's action was prompt because the employer did not respond to an initial sexual harassment complaint for two weeks, after additional complaints were made).

**B.    Title VII - Retaliation**

*1.    There is sufficient evidence for a jury to find that Meky has made a prima facie case of retaliation.*

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).  Jetson argues that Meky has not satisfied the third element of a prima facie case of retaliation because more than four months passed between her sexual harassment complaint on October 31, 2014, and her termination on March 9, 2015, and there is no other evidence linking the events.  This argument fails.

Meky testified that when she received her termination letter, she asked the Human Resources Director, Horvath, who was aware that Meky had lodged a sexual harassment complaint against Billings a few months earlier, why she was being terminated.  Meky Dep. 89:8-90:13.  According to Meky, Horvath informed her that she had "been so annoying," "complain[ed] too much," and asked for "too many personal" days off.  *Id.*  A jury could infer from this testimony that Horvath was referring to the sexual harassment complaint when she told Meky that she complained too much, which is direct evidence of a causal link.  *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987) ("There is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment.").  Additionally, Meky has offered indirect evidence of a causal link.

In the absence of direct evidence, a plaintiff may establish the requisite causal connection by proving "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). A plaintiff may also substantiate a causal connection by showing that the employer gave inconsistent testimony or inconsistent reasons for terminating the employee. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

Given the amount of time that elapsed between Meky's sexual harassment complaint in October 2014, and her termination in March 2015, Meky cannot rely on temporal proximity alone to establish a causal connection. *See Huston v. P&G Paper Prods. Co.*, No. 4:05-CV-2389, 2007 U.S. Dist. LEXIS 37867, at *29-30 (M.D. Pa. May 24, 2007) (concluding that three and one-half months between an employee's sexual harassment complaint and termination of her employment did not, alone, suggest a retaliatory motive). However, Meky has also shown that Jetson has offered inconsistent reasons for her termination. *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 755 (3d Cir. 1997) (considering the inconsistencies in the supervisor's testimony as to why he would not provide a reference for the former employee as evidence of retaliation).

Spess, the Human Resources Specialist, testified that Meky was terminated for two reasons: (1) she walked off the job on February 27, 2015, and (2) she failed to adhere to workplace resolution policy because she did not accurately and timely report a threat of bodily harm by one of her co-workers. Spess Dep. 144:11-14, 166:3-16, 167:9-15, 177:2-7. Spess's own testimony, however, appears to contradict his first proffered reason. *Id.* at 144:7-14. According to Spess, his investigation into Meky's decision to leave work revealed that on the day she left early, one of Meky's supervisors offered to move Meky to a different area after

learning of her problems with her co-worker, but that Meky informed her supervisor that she preferred to go home. *Id.* at 152:1-7. When Spess was asked whether that meant Meky in fact had permission to leave work that day, he answered: "I suppose we could say that, yes." *Id.* at 152:9-19. Spess further testified that under the circumstances, he thought it was reasonable for Meky to leave, *id.* at 150:18-23, and appropriate for her supervisor to let her leave, *id.* at 153:14-19. This testimony is inconsistent with Spess's claim that Meky was terminated for walking off the job.

As for Spess's second proffered reason for Meky's termination, he gave inconsistent testimony about whether Meky properly reported two incidents with her co-worker. Spess testified that during his investigation as to why Meky left before the end of her shift, he learned of two alleged incidents that occurred between Meky and her co-worker. The first, which occurred prior to the day Meky left work early, concerned a threat by Meky's co-worker to stab Meky with a pair of scissors. Spess Dep. 149:16-23. The second, which occurred on the day Meky left work, related to a threat by Meky's co-worker to punch Meky, which made Meky uncomfortable. *Id.* at 149:23-150:8. At one point in his deposition, Spess testified that Meky reported the scissors incident to her supervisor at the time it occurred and that the supervisor had worked with Meky to separate her from her co-worker. Spess Dep. 151:2-5, 154:16-24, 158:8-15, 159:16-20. However, at another point in his deposition, Spess testified that Meky never told the supervisor about the scissors incident until the day she left work early and that Meky implied that the scissors incident had only just happened that day. *Id.* at 192:1-193:8. Notably, there is no dispute that Meky was never counseled or disciplined prior to her termination for failing to follow proper procedures for raising workplace concerns. Kline Dep. 118:9-16.

9

In addition to being inconsistent with his own testimony, Spess's explanation for Meky's termination does not match that of Horvath's.  Horvath testified that Meky was terminated for two reasons, but only the first was the same offered by Spess.  Horvath testified that Meky was terminated because: (1) she walked off the job, and (2) she provided false information.  Horvath Dep. 211:10-214:15.  According to Horvath, the "false information" was given by Meky in December 2014, when she complained to Horvath that Spess had not responded to her request for FMLA leave.  *Id.* at 152:19-154:21; 211:10-213:22.  Horvath testified that this was false because Meky omitted the true reason that Spess had not responded: Meky failed to fill out an FMLA leave request form after she met with Spess.  *Id.*

Horvath's testimony was also internally inconsistent.  At one point in her deposition, Horvath testified that the primary reason for Meky's termination was her decision to walk off the job and that providing false information played "a very small portion" of the decision to terminate Meky.  *Id.* at 211:10-214:15.  At another point in her deposition, however, Horvath testified that providing the false information was the "more impactful violation."  *Id.* at 212:5-12. Further, Horvath testified that she did not think Meky's "false allegation is a good demonstration of team spirit," but when confronted with a letter she signed only a month after Meky allegedly provided false information, which notified Meky of a pay increase and stated: "You have demonstrated team spirit and hard work while here and have been a motivation to people working with you," Horvath admitted that this letter contradicted her testimony.  *Id.* at 204:22-207:3 (blaming her inconsistencies on her use of a "template letter").

Based on Meky's testimony,[2] as well as the inconsistencies in the reasons and testimony offered for her termination by Spess and Horvath, who knew about Meky's sexual harassment complaint, Meky has produced sufficient evidence to permit a jury to find in her favor.

> **2.    Jetson has failed to show that there is no dispute of fact over whether it had a legitimate, non-discriminatory reason for Meky's termination.**

Once a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  "If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997).  For the reasons previously discussed regarding the contradictions in the testimony of Jetson's witnesses, there is a genuine dispute about whether Meky was fired for a legitimate, non-discriminatory reason.

Furthermore, Jetson has failed to even establish who in the company made the decision to terminate Meky.  Each of the three witnesses Jetson proffers to explain the reasons for Meky's termination puts the final decision-making authority on another employee.  First, Spess testified that although he conducted an investigation and made a recommendation to terminate Meky, that

---

[2]    The Court recognizes that Meky testified that Horvath mentioned multiple reasons for her termination and that "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  It is possible, however, that a jury could discredit or minimize the other proffered reasons and find that Meky would not have been terminated but-for her sexual harassment complaint.

Moreover, because Meky's Title VII hostile work environment and sexual harassment claims and, for the reasons discussed below, her FMLA retaliation claim must be tried, the Court may deny summary judgment on the Title VII retaliation claim.  *See Taylor v. Rederi A/S Volo*, 374 F.2d 545, 549-50 (3d Cir. 1967) ("It is further settled that the trial court may exercise its discretion in denying summary judgment where a part of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried." (citing 6 James Wm. Moore et al., Moore's Federal Practice ¶ 56.15(8), at 2440-41 (2d ed.1965)).

he was not a deciding authority, and that the decision was made by Horvath and Kline.  Spess Dep. 144:15-145:15.  Second, Horvath testified that Kline made the decision to terminate Meky, while she and Spess merely provided Kline with the facts.  Horvath Dep. 188:1-24.  Third, Kline testified that she did not know who made the final decision to terminate Meky, but thought it was Horvath, Spess, or Preletz, another manager.  Kline Dep. 21: 2-7; 96:13-98:21.  Kline denied being involved with the decision, and testified that she only learned of Meky's termination after it happened.  *Id.* at 97:8-98:12, 104:8-20.  Significantly, each of these three individuals was aware of Meky's sexual harassment complaint against Billings.

As to the additional allegedly independent, non-discriminatory reasons for Meky's termination that are mentioned in Jetson's brief, they are based on Kline's testimony, *see* Defs.' Brief Supp. Mot. Summ. J. 8-9, ECF No. 24-3, but Kline stated that she had no involvement in the termination decision.  Moreover, Meky was never formally disciplined or "coached" for her alleged performance issues, and although Kline alluded to secondhand complaints about the quality of Meky's work, Kline testified that she never observed any problems first-hand.  Kline Dep. 47:24-48:24; 57:7-61:12.  Accordingly, Jetson has failed to meet its burden and summary judgment on the Title VII retaliation claim is denied.

### C.      FMLA - Interference

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided by the Act.  29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim,

> a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (internal quotations omitted).  An "'eligible employee' means an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested."  29 U.S.C. § 2611(2)(A).[3]  To obtain relief, the plaintiff must show that he was "prejudiced by the violation."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Jetson makes two arguments: (1) Meky was not an "eligible employee," and (2) even if Meky was entitled to FMLA benefits, she was not prejudiced by Jetson's alleged failure to provide paperwork.  As to the first contention, Jetson contends that it should be awarded summary judgment because Meky was not an "eligible employee" as her requested FMLA leave would have commenced within her first twelve months of permanent employment with Jetson, and her previous time as a temporary employee cannot be tacked on to her period of permanent employment to satisfy the twelve-month requirement.  Meky, however, argues that her requested leave date did not fall within her first twelve months of permanent employment and that, regardless, her time spent as a temporary employee should be counted because Hobbie, the temporary staffing company that first connected her with Jetson, was a "joint employer"[4] with Jetson.  In support of its second argument, Jetson asserts that although the Director of Human Resources met with Meky after her leave was denied, she "took no steps to further exercise her rights or better inform herself of what rights she had under the FMLA."  Meky responds that because Jetson failed to provide her with information as to when it believed she would become eligible for FMLA benefits, she was unable to rearrange her requested leave date.

---

[3]     The statute also requires that the employee "has at least 1,250 hours of service with such employer during the previous 12-month period," but Jetson has not argued that Meky has not met the requisite hours requirement.

[4]     "Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA."  29 C.F.R. § 825.106(a).

> **1.      Because the time Meky worked for Jetson as a temporary employee is tacked on to the time she worked as a permanent employee, she was an "eligible employee" under the FMLA.**

Jetson asserts that there is no authority in the Third Circuit, including its District Courts, to tack on the time spent working for the employer through a temporary staffing agency to the time spent working directly for the employer.  Making two arguments, Jetson initially contends that "an employee can only ever be employed by one (1) employer and/or entities working 'directly or indirectly in the interest of an employer' at any given time."  Def.'s Brief 11, ECF No. 24-3 (quoting 29 U.S.C.A. § 2611(4)(A)).  Jetson argues that because it and Hobbie are separate entities, they were not working on behalf of one another.  *Id.*

This first argument is unpersuasive because the FMLA specifically allows joint employers to be "separate and distinct entities with separate owners, managers, and facilities." 29 C.F.R. § 825.106(a).  Additionally, one employer acting directly or indirectly in the interest of the other employer is only one situation in which a joint employment relation may exist. Administrative regulations interpreting the FMLA list additional situations in which a joint employment relationship exists, such as "[w]here the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek."  29 C.F.R. § 825.106(a).  The regulations specifically mention temporary agencies supplying employees to another employer as a situation in which a joint employment relationship has been found to exist.  29 C.F.R. § 825.106(b)(1) (stating, "joint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer").

Jetson's second contention, which accepts the concept of concurrent employment, is that once Meky chose to terminate her relationship with the temporary staffing agency by becoming a

permanent employee of Jetson, joint employer coverage no longer applied.  Jetson asserts that

the purpose of the joint employer regulation is to define the responsibilities among primary and

secondary employers, but that once Meky left the temporary staffing agency the identity of the

employer with FMLA obligations became clear.

Jetson's second argument is also unpersuasive.  Initially, this Court finds that Jetson and

Hobbie were joint employers.  A joint employment relationship under the FMLA may exist:

> (1) Where there is an arrangement between employers to share an employee's
> services or to interchange employees;
>
> (2) Where one employer acts directly or indirectly in the interest of the other
> employer in relation to the employee; or,
>
> (3) Where the employers are not completely disassociated with respect to the
> employee's employment and may be deemed to share control of the employee,
> directly or indirectly, because one employer controls, is controlled by, or is under
> common control with the other employer.

29 C.F.R. § 825.106(a).  Any of these situations could apply here.  As to the first, on January 23,

2012, Jetson entered into an agreement for Hobbie to provide "comprehensive staffing services

for Jetson."  *See* Executive Summary 348, ECF No. 24-7.  This arrangement included Hobbie

sharing an employee by supplying to Jetson "an Account Manager at no additional cost."  *Id.* at

350.  Regarding the second scenario, the Hobbie Account Manager, working in the interest of

Jetson, was provided "[i]n order to reduce or eliminate [Jetson's] administrative burden" and "to

secure and retain the best available people to work at [Jetson's] Kutztown, PA facility."  *Id.* at

350.  Hobbie's "Account Manager [would also] regularly discuss[] daily operations and the

production schedules with [Jetson's] managers and leaders."  *Id.*  The third situation is also

implicated because Hobbie and Jetson shared control of employees in that the Account Manager

"directly manages and oversees" the employees, provides "day-to-day solutions and resolutions

to any staffing needs," and "becomes the contingent labor's first stop for questions related to

paychecks, policies and more." *Id.* Moreover, as previously mentioned, joint employer coverage generally applies where temporary agencies supply employees to another employer. *See* 29 C.F.R. § 825.106(b)(1).

Having found that Jetson and Hobbie were joint employers, this Court rejects Jetson's assertion that once Meky became its permanent employee, joint employer coverage no longer applied. Contrary to Jetson's claim, the purpose of the joint employer regulation is not *solely* to define the responsibilities among primary and secondary employers. Rather, joint employer coverage also assists "in determining employer coverage and employee eligibility." 29 C.F.R. § 825.106(d) (stating that "[e]mployees jointly employed by two employers must be counted by both employers . . . in determining employer coverage and employee eligibility"). Therefore, even after Meky became a permanent employee of Jetson, the joint coverage regulation must be considered in determining when Meky became eligible for FMLA benefits. *See Miller v. Defiance Metal Prods.*, 989 F. Supp. 945, 946-48 (N.D. Ohio 1997) (concluding that the plaintiff's FMLA eligibility is determined from the date joint employment began even though the plaintiff terminated her position with the temporary staffing agency during the first twelve months by becoming a permanent employee of the defendant), *overruled on other grounds Rocha v. Sauder Woodworking Co.*, 221 F. Supp. 2d 818, 820 (N.D. Ohio 2002).

Meky began working as a temporary employee for Jetson on January 27, 2014. *See* Employee Summary 340, ECF No. 24-7. She therefore became an "eligible employee" on January 27, 2015, regardless of the fact that she did not work solely for Jetson until July 2, 2014.

Including the time Meky spent working for joint employers in determining when she became eligible for FMLA benefits is consistent not only with the purpose of the joint coverage regulation, but also with the Act as a whole. The purpose of the FMLA is "to balance the

demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." *See* 29 U.S.C. § 2601(b).

Under Jetson's argument, an employee who worked for eleven months and twenty-nine days with a temporary placement agency and then accepted an offer of permanent employment from the secondary employer would have to work an additional twelve months before becoming eligible for FMLA benefits, but would have been covered by the FMLA in only a few days if he or she had rejected the offer and remained jointly employed. This consequence conflicts with the purpose of the FMLA.

Jetson's contention is also inconsistent with Congress's intent that the FMLA and the definitions contained therein be broadly construed. *See Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195-96 (3d Cir. 2015). As previously mentioned, an "eligible employee" is "an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). The terms "employ" and "employee" have the same broad meanings under the FMLA as that given to such terms in the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 2611(3); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947) ("The definition of 'employ' is broad."); *Zygowski v. Erie Morning Telegram Inc.*, 298 F.2d 639, 641 (3d Cir. 1962) (stating that the definitions of employee, employer, and employ under the FLSA are broad). Under the FLSA, the term "[e]mploy includes to suffer or permit to work." 29 U.S.C. § 203(g). The United States Supreme Court has held that the "striking breadth" of the FLSA's definition of employ "stretches the meaning of 'employee' to cover some

17

parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).  Applying this broad definition here, Jetson has employed Meky since January 27, 2014, when it first permitted her to work.

Considering the broad scope of the definitions and the purpose of the FMLA, the other district courts[5] that have addressed this matter have similarly concluded that the time an employee spent working for an employer through a temporary agency is tacked on to the time spent working as a permanent employee in determining when the employee is eligible for FMLA benefits.  *See Miller v. Nordam Group, Inc.*, No. 12-CV-563-TCK-PJC, 2013 U.S. Dist. LEXIS 164299, at *9-12 (N.D. Okla. Nov. 19, 2013) (concluding that before the defendant became the plaintiff's permanent employer, the defendant was a "joint employer" of the plaintiff with the temporary staffing agency and that this time must be considered in determining her FMLA eligibility); *Allan v. Cuna Mut. Ins. Soc'y*, No. C10-2016 EJM, 2011 U.S. Dist. LEXIS 125921, at *3 (N.D. Iowa Oct. 5, 2011) ("The court is satisfied that for FMLA purposes, plaintiff's term of employment began upon her assignment to CUNA by the temporary agency, rather than upon subsequent permanent hiring and therefore she meets the FLMA requirements as to time and hours." (internal citation omitted)); *Mackey v. Unity Health Sys.*, No. 03-CV-6049T(F), 2004 U.S. Dist. LEXIS 8830, at *9-10 (W.D.N.Y. May 10, 2004) (determining that "for FMLA eligibility purposes, an employee's term of employment begins once assigned by the temporary agency, rather than when hired as a permanent employee"); *Phillips v. Leroy-Somer N. Am.*, No. 01-1046-T, 2003 U.S. Dist. LEXIS 5349, at *9-10 (W.D. Tenn. Mar. 28, 2003) (concluding that the time the plaintiff worked as a joint employee of the defendant and a temporary staffing

---

[5]       There is no circuit authority directly on point regarding the tacking issue, nor any district court opinions in the Third Circuit.

agency is considered in determining when she became an "eligible employee" under the FMLA);

*Salgado v. CDW Computer Ctrs., Inc.*, No. 97 C 1975, 1998 U.S. Dist. LEXIS 1374, at *9-12

(N.D. Ill. Feb. 4, 1998) (concluding that the time the plaintiff worked for the defendant as a

temporary worker "counts toward satisfying the one-year eligibility requirement" even after the

plaintiff accepted a permanent position with the defendant); *Miller*, 989 F. Supp. at 946-48

(holding that the "reclassification of plaintiff from temporary to permanent employee does not

alter that time frame" "used to determine the length of her employment with defendant for

FMLA purposes").

Because Meky became an "eligible employee" under the FMLA on January 27, 2015,

well in advance of her requested FMLA leave date, Jetson's Motion for Summary Judgment as to

the FMLA interference claim on this basis is denied.

> **2.      If the time Meky spent working for the temporary staffing agency could not be tacked on to her time as a permanent employee, there would be a genuine dispute of material fact as to whether her FMLA leave date fell after 12 months of permanent employment.**

Toward the end of 2014,[6] Meky requested to take four weeks of leave the following

summer to care for her mother, who needed surgery.  Meky testified that she asked one of her

---

[6]      The fact that Meky had not yet been employed for twelve months at the time she submitted her leave request is not determinative.  *See* 29 C.F.R. § 825.300(b)(1) ("Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."); *Beffert v. Pa. Dep't of Pub. Welfare*, No. 05-43, 2005 U.S. Dist. LEXIS 6681, at *9-10 (E.D. Pa. Apr. 18, 2005) (explaining that because "the FMLA contemplates notice of leave in advance of becoming an eligible employee, the statute necessarily must protect from retaliation [and interference] those currently non-eligible employees who give such notice of leave to commence once they become eligible employees").  Jetson's reliance on *Sinacole* to suggest that Meky may not raise an FMLA interference claim is misplaced.  *See Sinacole v. iGate Capital*, 287 F. App'x 993 (3d Cir. 2008).  The reason Sinacole was not an eligible employee at the time she made an application for FMLA leave, which was to commence upon the birth of her child approximately five months later, was because she had not met the minimum hours worked requirement.  *Id.* at 995-96 (concluding, "it is not reasonable for us to infer that she could have worked more hours

managers to take leave during the month of July 2015.  Meky Dep. 72:13-75:2.  Because the
request was for a period of time longer that she was authorized to approve, this manager
forwarded the FMLA request to Spess in human resources.  Kline Dep. 14:16-15:2, 82:19-83:5,
86:3-10.  Spess testified that his recollection was that Meky had been seeking leave for the
month of June, not July.  Spess Dep: 124:16-125:7, 126:4-8; *see also* Horvath Dep. Ex. 4, ECF
No. 24-10 (containing a "Notice of Eligibility" form Spess completed on December 12, 2014,
which indicated that Meky requested leave on December 10, 2014, to begin in June 2015).  He
further testified that although he did not recall the specific dates in June, he looked at Meky's
July hire date to determine whether she would be eligible for FMLA leave by the time of her
anticipated leave date and that she did not meet the twelve-month requirement.  *Id.* at 133:21-
137:6.

It is undisputed that Meky became a permanent employee on July 2, 2014.  *See* Defs.'
Stmt Facts ¶ 20, ECF No. 24-2, admitted in Pl.'s Stmt Facts ¶ 20, ECF No. 27-2.  Accordingly, if
Meky's time spent working for Jetson through Hobbie is not counted in determining her FMLA
eligibility, then there is a genuine dispute of material fact as to whether her requested leave date
fell after twelve months of permanent employment.  Jetson's Motion for Summary Judgment as
to the FMLA interference claim is therefore denied for this reason as well.

### 3.     *Summary judgment is granted on Meky's claim that Jetson refused to provide her FMLA paperwork because she was not prejudiced by the alleged violation.*

Pursuant to 29 C.F.R. § 825.300, when "an employee requests FMLA leave, . . . the
employer must notify the employee of the employee's eligibility to take FMLA leave within five
business days, absent extenuating circumstances."  "If the employee is not eligible for FMLA

---

before the birth of her child").  Unlike Meky, the passage of time alone would not be sufficient to
make Sinacole an eligible employee; therefore, she could not produce evidence that she was
eligible for FMLA benefits on her requested leave date.

leave, the notice must state at least one reason why the employee is not eligible, including as applicable the number of months the employee has been employed by the employer . . . . Notification of eligibility may be oral or in writing." 29 C.F.R. § 825.300(b)(2).  The employer's failure to supply notice "provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost by reason of the violation, for other monetary losses sustained as a direct result of the violation, and for appropriate equitable relief, including employment, reinstatement, and promotion."  *Ragsdale*, 535 U.S. at 89 (internal citations omitted).  To show an interference with the right to FMLA leave, the plaintiff must establish that the "failure to advise rendered [her] unable to exercise that right in a meaningful way, thereby causing injury."  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004).

Meky's interference claim is based on two theories: (1) that Jetson interfered with her rights by firing her for requesting FMLA leave,[7] and (2) that Jetson interfered with her rights by refusing to provide her with FMLA paperwork.  Moving for summary judgment on the second theory, Jetson admits that there is a factual dispute as to whether FMLA paperwork was provided, but argues that Meky's claim fails as a matter of law because she suffered no prejudice.[8]  Meky, however, claims that she was prejudiced by Jetson's violation because it prevented her from being able to rearrange her requested leave date.[9]

---

[7]     *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee.").

[8]     Jetson also contends that Meky was not an eligible employee, but for the reasons set forth above, summary judgment on this basis is denied.

[9]     As Meky's termination is a separate basis for her interference claim, her injury must be something other than her termination.

21

It is undisputed that Meky requested FMLA leave after learning that her mother, who lived in Egypt, needed heart surgery. Meky Dep. 72:22-74:17. Surgery had not been scheduled when she submitted her FMLA request, but Meky sought leave for the summer of 2015. *Id.* at 74:19-75:13. Months before her requested FMLA leave would begin, however, Jetson terminated Meky.[10] Prior to her termination, Meky had not made any travel plans to Egypt. *See* Meky Dep. 80:4-10. Subsequently, Meky did travel to Egypt from approximately June 16 and to August 18, 2015, to care for her mother, although her mother never had surgery. *Id.* at 122:13-123:8. Meky was unemployed at the time, *see id.* at 155:22-156:17, and therefore was not forced to take unpaid leave or vacation time in leu of FMLA leave. There is no evidence that she suffered any monetary loss by Jetson's alleged FMLA violation in this regard. Accordingly, Meky has failed to establish that she was injured by Jetson's alleged failure to provide her with FMLA paperwork.[11] *See Ragsdale*, 535 U.S. at 89 ("The remedy is tailored to the harm suffered."); *Lynch v. Robertson*, No. 3:2005-201, 2007 U.S. Dist. LEXIS 60835, at *70-71 (W.D. Pa. Aug. 17, 2007) (finding that the record did not contain evidence that the employee, who was terminated before ever trying exercise any FMLA rights, was prejudiced by the employer's alleged failure to advise him of his FMLA rights).

---

[10]    Meky's termination is a separate basis for her interference claim and is not relevant to prejudice under this alternative theory. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee.").

[11]    The courts have also recognized an interference claim where an employer's actions "chilled" the assertion of FMLA rights, *see FOP v. City of Camden*, 842 F.3d 231, 245 (3d Cir. 2016), but Meky's claim that she would have rearranged her FMLA leave date if she had been provided with the FMLA paperwork establishes that she was not deterred from asserting her rights.

### D.      FMLA- Retaliation

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). With respect to the third element, "[t]he requisite causal connection can be established by (1) temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise the inference." *Innella v. Lenape Valley Found.*, No. 14-2862, 2015 U.S. Dist. LEXIS 171671, at *29-30 (E.D. Pa. Dec. 23, 2015) (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997))). "[A]n employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein*, 691 F.3d at 301. Jetson asserts that there is no evidence of a causal link between Meky's December 2014 notice of FMLA leave and her termination in March 2015, and that, regardless, there were non-discriminatory reasons for her termination.

As discussed previously, Meky testified that Horvath told her that she was being terminated because she had "been so annoying," "complain[ed] too much," and asked for "too many personal" days off. Meky Dep. 89:8-90:13. Considering Meky's testimony that she had to apply for FMLA leave on multiple occasions, *id.* at 145:11-12, 146:14-148:18, and Horvath's testimony that Meky complained to her about not receiving a response to her FMLA request, *see* Horvath Dep. 152:19-153:6, a jury could infer that Horvath was referring to Meky's attempts to obtain answers to her FMLA leave request when stating that she "complain[ed] too much." As for Meky's testimony that Horvath had commented that Meky had taken "too many personal"

days, Meky testified that Horvath must have been referring to her request for FMLA leave because she had not taken any vacation days since becoming a permanent employee in July 2014. *Id.* at 91:10-20. Thus, if a jury were to believe Meky's testimony, it could find a causal link between her termination and assertion of FMLA rights. *See Jackson*, 826 F.2d at 236.

Moreover, there is a dispute of fact as to temporal proximity of the denial of Meky's request for leave and her termination. Spess testified that he met with Meky to discuss her FMLA request around December 16, 2014, less than a week after he received the request. Spess Dep. 130:16-132:2. Meky testified that she did not remember that meeting, and, instead, that she first met with Spess about one week before she was terminated. Meky Dep. 80:24-81:6, 145:16-24. One week would be sufficiently close in time to support an inference of a causal connection between the two events. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (holding that the employee's termination "just seven days after she invoked her right to FMLA leave, and just three days after [her supervisor] returned from vacation" was adequate temporal proximity to establish a prima facie case of retaliation); *Estate of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 U.S. Dist. LEXIS 130199, at *31 (E.D. Pa. Nov. 9, 2011) (finding that the timing of eleven days is sufficient temporal evidence to establish causation in the plaintiff's prima facie case for FMLA retaliation). Consequently, Meky has made a prima facie case of retaliation.

For the reasons previously discussed, Jetson has failed to establish legitimate, non-discriminatory reasons for Meky's termination to counter the evidence she has submitted that, if credited, raises an inference of discrimination. Summary judgment is therefore denied on the FMLA retaliation claim.

E.       **Wage Payment and Collection Law**

Jetson asserts that Meky's claim for relief under the WPCL is moot because after the Complaint was filed, it determined that Meky was owed wages for unused vacation time and promptly forwarded her a check for the full amount.  During her deposition, Meky acknowledged that she received that check, Meky Dep. 110:11-24, and she makes no reference to this claim in her opposition brief.  Accordingly, based on the undisputed evidence, summary judgment on Count III, asserting a violation of the WPCL, is granted in favor of Jetson.  *See also Walker v. Centocor Ortho Biotech, Inc.*, No. 11-419, 2013 U.S. Dist. LEXIS 25191, at *11 (E.D. Pa. Feb. 25, 2013) (granting summary judgment on a hostile work environment claim because the plaintiff failed to mention it in opposition to the defendant's motion for summary judgment).

V.       **CONCLUSION**

Genuine issues of material fact preclude the entry of summary judgment on Meky's Title VII sexual harassment and hostile work environment claim, and one ground of her FMLA interference claim.  Summary judgment is also denied on Meky's retaliation claims under Title VII and the FMLA based on Meky's direct evidence of a causal link between the assertion of her rights and her termination and of the inconsistencies in the testimony of the Jetson employees. However, summary judgment is entered in favor of Jetson on the FMLA interference claim to the extent that it is based on Jetson's alleged failure to provide Meky with FMLA paperwork because she was not prejudiced.  Summary judgment is also granted on Meky's WPCL claim because Jetson paid Meky for her unused vacation hours.    A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

25